UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GENE TATUM, SR.,

       Plaintiff,

                                            File No.  4:05-CV-66

v.

                                            HON. ROBERT HOLMES BELL

MICHIGAN STATE POLICE TROOPER
SCOTT ZIESMAN, et al.,

       Defendants.
                                                  /

**O P I N I O N**

Plaintiff Gene Tatum, Sr. filed this 42 U.S.C. § 1983 action against two Michigan State Police Troopers, Scott Ziesman and Gary Starkweather, asserting claims of excessive force and violation of due process.  This matter is currently before the Court on Defendants' motion for summary judgment.

**I.**

The underlying facts are not in dispute.  On February 1, 2003, Plaintiff was pulled over for a traffic violation by Defendants Ziesman and Starkweather.  After Plaintiff failed field sobriety tests and the preliminary breath test, Defendants arrested him, placed him in handcuffs, and transported him to the state police post in Battle Creek where they obtained a search warrant for a blood test.  While Defendants prepared the paperwork at the post, Plaintiff urinated on himself.

Defendants transported Plaintiff to the hospital where a blood alcohol sample was drawn. While at the hospital Plaintiff complained of pain to his wrists from the handcuffs. The hospital noted "very mild swelling" in the right dorsal wrist at the base of the thumb. The hospital released Plaintiff back into the custody of the Defendants still in handcuffs. Defendants transported Plaintiff to the county jail.

In January and February 2004, Plaintiff had surgery on both of his wrists to address bilateral carpal tunnel syndrome.

Plaintiff has alleged that Defendants violated his Fourth and Fourteenth Amendment right to be free from excessive force and his Fourteenth Amendment right to substantive due process. Plaintiff's excessive force claim is based upon his assertion that his handcuffs were applied too tightly, that Defendants refused to loosen them despite his repeated complaints, and that as a result Plaintiff developed bilateral carpal tunnel syndrome requiring surgery on both of his wrists. (Compl. ¶¶ 23(a) & (b)). Plaintiff's due process claim is based upon his assertion that the Defendants' refusal to allow him to use the bathroom, despite his repeated requests, caused him to urinate upon himself. (Compl. ¶ 23(c)).

**II.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of America*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**III.**

Defendants have moved for summary judgment. Defendants contend they are entitled to judgment on Plaintiff's excessive force claim because the undisputed facts show that their conduct and the force used was reasonable. Defendants contend they are entitled to judgment on Plaintiff's due process claim because Defendants' conduct does not shock the conscience. Alternatively, Defendants contend that they are entitled to qualified immunity because reasonable police officers in their position could have believed that their conduct was lawful.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether Defendants are entitled to qualified immunity, the Court undertakes a two-fold inquiry: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right," and (2) whether the constitutional right at issue is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

The Court is satisfied that Plaintiff's excessive force claim is not subject to dismissal on the basis of qualified immunity. The Sixth Circuit has held that "excessive force claims can be maintained for cuffing an individual's wrists too tightly." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (citing *Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342)). The Sixth Circuit has also held that "excessively forceful handcuffing," is a clearly established right for purposes of the qualified immunity analysis. *Id.* at 641 (citing *Martin*, 106 F.3d at 1313; *Walton*, 995 F.2d at 1342).

The Court accordingly turns to consideration of Defendants' motion for summary judgment on the merits of the excessive force claim. In order to get to a jury on this claim Plaintiff must present evidence that he suffered some physical injury as a result of the

handcuffing, and that the officers ignored his complaints that the handcuffs were too tight. *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001); *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002).

Defendants acknowledge that there is a factual dispute as to whether Plaintiff complained about the handcuffs before he arrived at the hospital. They contend, however, that Plaintiff has not established that he suffered any physical injury from the handcuffs.

In support of their assertion that Plaintiff suffered no physical injury from the handcuffs, Defendants rely on the testimony of Plaintiff's treating surgeon, Dr. Raghu Elluru. Dr. Elluru testified that although handcuffs could theoretically cause carpal tunnel syndrome, the cuffs would have to be so tight as to constrict the radial artery and ulnar artery, so he would expect to see swelling and discoloration of the hands. (Elluru Dep. at 12-13). He testified that swelling on the dorsal radial aspect of the wrist close to the base of the thumb, as observed by the hospital staff, would not contribute to carpal tunnel syndrome. (Elluru Dep. at 8-9, 14). He also testified that because Plaintiff had carpal tunnel syndrome in both wrists, if the handcuffing were the cause of Plaintiff's carpal tunnel syndrome he would have expected there to be swelling in both wrists at the time of the handcuffing. (Elluru Dep. at 16). Dr. Elluru testified that if the handcuffs were placed tightly enough to cause carpal tunnel syndrome, he would expect to see other manifestations other than isolated carpal tunnel syndrome, such as tendonitis of the tendons on top of the wrist, some circumferential bruising, and some more significant swelling of the hand and wrist in the area. (Elluru Dep.

at 20). He was not aware of any scenario where the symptoms of carpal tunnel syndrome that were the result of a traumatic incident would take weeks to manifest themselves. (Elluru Dep. at 27).

In support of their motion for summary judgment on the excessive force claim Defendants also note that in June 2003, Plaintiff claimed under penalty of perjury in connection with a workers compensation claim, that his injuries had an onset date of approximately March 2003, and that they were work-related.

In response to Defendants' motion for summary judgment Plaintiff has presented the testimony of his family physician, Dr. Papendick. Dr. Papendick testified that he routinely diagnoses carpal tunnel syndrome, and it was his opinion to a reasonable degree of medical certainty that Mr. Tatum either had a preexisting but asymptomatic carpal tunnel condition that was exacerbated by the handcuffs, or that the handcuffs caused his carpal tunnel injury in the first instance. (Papendick Dep. at 42-46).

Although Dr. Elluru's testimony on the issue of causation appears to be more convincing than the testimony of Dr. Papendick, in determining whether to grant summary judgment, the Court may not make determinations of witness credibility. *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). The Court is satisfied Plaintiff has submitted sufficient evidence to raise material questions of fact for trial on the issue of whether the handcuffing caused his carpal tunnel syndrome. Accordingly,

Defendants' motion for summary judgment on Plaintiff's excessive force claim will be denied.

### IV.

Defendants have also moved for summary judgment on Plaintiff's due process claim. Defendants contend that their failure to immediately grant Plaintiff's request does not shock the conscience and, in any event, they are entitled to qualified immunity on this claim because there is no clearly established right to be taken immediately to the bathroom on an arrest for drunk driving.

Substantive due process claims are based upon a "shocks the conscience" standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). While this is not a precise standard, at a minimum, it requires a showing "beyond mere negligence." *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002).

Defendants testified that Plaintiff asked to use the bathroom after they brought him to the police post, and that they told him they would take him to the bathroom in just a minute. (Zeisman Dep. at 19-20; Starkweather Dep. at 20-25). According to Defendant Starkweather, Plaintiff urinated on himself immediately after he made the request to use the bathroom. (Starkweather Dep. at 25).

Plaintiff testified that he asked the Defendants once in the car if they would take him to the bathroom when they arrived at the police post. (Tatum Dep. at 45). After arriving Plaintiff asked again to use the bathroom and they told him it would be a minute. (Tatum

7

Dep. at 45-46). Plaintiff testified that he had been at the police post for at least ten minutes when he urinated on himself. (Tatum Dep. at 46).

Plaintiff's response to Defendants' motion for summary judgment does not address the due process claim. It appears to this Court that Plaintiff is conceding that summary judgment can be entered against him on this claim. In any event, Plaintiff has not pointed to any specific evidence that would create a material issue of fact for trial as to what occurred. The Court is satisfied that the facts, taken in the light most favorable to Plaintiff, do not support a finding of conduct that shocks the conscience. Accordingly, Defendants will be granted summary judgment on Plaintiff's substantive due process claim.

V.

For the reasons stated, Defendants' motion for summary judgment will be granted in part and denied in part. The motion will be granted as the Plaintiff's due process claim, and denied as to Plaintiff's excessive force claim.

An order and partial judgment consistent with this opinion will be entered.


Date:     August 30, 2006            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE